UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANDREA NELSON,
Plaintiff-Appellant,

v.

WATERGATE AT LANDMARK,

No. 95-2818

Defendant-Appellee.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
Amicus Curiae.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Richard L. Williams, Senior District Judge.
(CA-95-72-A)

Argued: October 28, 1996

Decided: February 21, 1997

Before MURNAGHAN, WILLIAMS, and
MICHAEL, Circuit Judges.

_____

Remanded by unpublished per curiam opinion. Judge Williams wrote
a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Sol Zalel Rosen, Washington, D.C., for Appellant. Karen
Marie Moran, Office of General Counsel, EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, Washington, D.C., for Amicus

Curiae. William Frederick Causey, JACKSON & CAMPBELL, P.C., Washington, D.C., for Appellee. **ON BRIEF:** C. Gregory Stewart, General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Office of General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Andrea Nelson, an African American, filed a complaint under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e (1994 & Supp. 1996), and 42 U.S.C. § 1981 (1994 & Supp. 1996), charging that her employer discriminated against her because of her race, and that she was unlawfully terminated in retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The jury returned a verdict of $4,000 in Nelson's favor on the Title VII and 1981 discrimination claims, but found for the employer on the retaliation claim.

The district court set aside the jury verdict and entered a judgment as a matter of law in favor of the defendant employer on the grounds that Nelson had failed actually or constructively to notify her employer regarding her racial discrimination claim as required by Dennis v. County of Fairfax, 55 F.3d 151, 155 (4th Cir. 1995).**1** Since

_____

**1** The district court did not question the sufficiency of the evidence regarding discrimination, it only questioned whether her employer had notice of the discrimination. The district court, having found that Nelson had established a prima facie case of discrimination, properly sent the case to the jury. If a plaintiff makes out a prima facie case, "rejection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination, and . .. [n]o additional proof of discrimination is required." St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993) (emphasis in original). Thus, based on the evidence, the jury was permitted to conclude that racial discrimination had taken place.

2

we find that Nelson's EEOC complaint was sufficient to satisfy her burden of notice under Dennis, we reverse the district court's grant of a judgment as a matter of law and remand so that the verdict in Nelson's favor may be reinstated.

Andrea Nelson was originally hired by Watergate at Landmark (WAL) in December 1991 as a temporary switchboard operator. After the temporary position ended in February 1992, Nelson was re-hired as a customer service representative. In March 1992 she transferred to be the assistant to the director of activities. In June 1992 Nelson accepted her final position as administrative assistant to the director of administration, Robert Swain. Nelson was the only African American employed in the front office at WAL, and she was the only African American administrative assistant.

Nelson claims that after accepting the position as an administrative assistant she began to experience disparate treatment in her employment. She argues that the terms and conditions of her employment were drastically different than that of the white person who previously held her position, and were different than that of other white people who were similarly situated.

Nelson alleges that (1) she was paid on an hourly basis while other white employees similarly situated, and the white person previously employed in her position were salaried employees; [2] (2) she was "written up" for being one minute tardy while a white employee similarly situated was able to come and go as she pleased; (3) her name was purposefully left off the company's organizational chart even though her predecessor's name was on the chart, and even though all other administrative assistants' names were on the chart; [3] (4) white employees who were given supervisory responsibility were given raises while she was not;[4] (5) she was required to speak directly with her

_____

[2] After Nelson complained, WAL agreed to make Nelson a salaried employee.
[3] Nelson's supervisor allegedly refused to place her name on the chart even after Nelson informed him of the discrepancy.
[4] In December 1992 Nelson became a supervisor of several employees. Nelson did not receive a pay raise for the added responsibility. In March

3

supervisor whenever she needed time off, while other white employees were able to leave voice mail messages or speak with the supervisor's secretary; and (6) she was required to bring in a physician's note to justify her taking two sick days leave while other white employees were only required to bring in a physician's note if their illness exceeded three days.

In April 1993 Nelson wrote a memorandum to James Cisco, the president of WAL's Board of Directors, complaining about Swain's treatment of her. In October 1993 Nelson filed a complaint with the EEOC alleging that she had received disparate wages and that she was harassed and disciplined more harshly in retaliation for her complaints and because of her race.[5] Nelson also asserted constant harassment and subjection to disparate discipline and wages.

After filing the complaint, Nelson wrote another memorandum, this time to Swain, complaining that he ridiculed her in a meeting with the general manager, that he commented as he was passing her desk that she was "bout [sic] to break" and that he spent numerous hours typing memos against her. She also claimed that she had been "informed that, because of [her] charges, there would be numerous attempts to frustrate [her]. . . ."

In February 1994 Nelson wrote a memorandum to the general manger, Petrine Squires, complaining that, during her tenure at WAL, Swain would not approve requests for changes in her work schedule to accommodate doctor's appointments, he applied sick leave policies differently to her than to others, he purposely made her job more difficult to do, he caused upper management to hold her in low esteem, he engaged in sexual harassment of other employees, he yelled at her,

_____

1993, WAL authorized a raise for a white employee because the white employee had been given extra responsibility as a supervisor. Nelson wrote to the general manager and asked why she did not receive a wage increase when she received added responsibility. In this memorandum, Nelson also asked why she was being treated differently.

**5** Nelson's EEOC complaint stated:"I [Andrea Nelson] believe I have been discriminated against because of my race (black). . . ."

4

and he appeared to have a difficult time working with men, older women and minorities.**6**

In response to this memorandum, WAL hired a law firm to investigate Nelson's allegations of sexual harassment. **7** The firm concluded that there was no evidence to substantiate these allegations. In April 1994 Nelson was terminated.

Five months elapsed between the time Nelson filed her EEOC complaint and the time she was fired. WAL took no corrective action

_____

**6** In addition to the EEOC complaint, Nelson's memo to Squires also provides notice of racial discrimination. In her memo she states:

> Someone may think that [Swain] has something against working with men, older women, and race minorities. His record speaks for itself. Since he has been director over the management office, he has hired no one except, young, white, females for his department. Yet, he has been responsible for ruining the reputation and firing two males, now the attempt on a black female, all who worked under him. . . .

> . . .

> The [NAACP counselors] advised me that leaving WAL was not the answer and provided me with material to study to better my working relationship. . . . The representative explained to me about the lack of understanding that whites have when it comes to some of the problems of blacks in management and how blacks in management have a lack of understanding about what whites in management go through. They recommended the book The Black Manager. . . .

> . . .

> . . . It was often repeated to me by these organizations of reform, that if I left, I would be cutting off a pathway for another race minority. They instilled in me that, I should seek employment elsewhere only if my reasons were genuine and wanting to move on to greater opportunities, but to leave any place of employment because of indifferent treatment was wrong for everyone concerned (emphasis added).

**7** WAL investigated the sexual harassment allegation, but it did not investigate either Nelson's EEOC complaint or the complaint in her memo to Squire.

5

regarding the discrimination claim.**8** Therefore, during the five months, adequate notice had been given to the employer regarding Nelson's racial discrimination claim, yet no timely and adequate corrective action concerning <u>racial</u> harassment or discrimination had been taken. "The employer is liable where it had actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action." <u>Dennis</u>, 55 F.3d at 155 (internal quotations omitted). "The above reasoning applies as well to claims of racial discrimination in the workplace under § 1981." <u>Id.</u> WAL had such notice; accordingly, we remand so that the verdict in Nelson's favor may be reinstated.

<u>REMANDED</u>

WILLIAMS, Circuit Judge, dissenting:

For the reasons stated in the district court's memorandum opinion in this case, <u>see Nelson v. Watergate at Landmark</u>, 898 F. Supp. 346 (E.D. Va. 1995), I do not believe that Nelson's employer, WAL, failed to respond to sufficient notice of a racially hostile environment. I would affirm the district court's grant of judgment as a matter of law for WAL on Nelson's claims under Title VII and 42 U.S.C. § 1981.**1** Accordingly, I dissent.

_____

**8** WAL argues that they did not investigate the racial discrimination allegation since they thought Nelson's complaints involved sexual harassment. However, at the time Nelson wrote the memorandum claiming that she was treated differently, Nelson had already filed EEOC charges based on race. The EEOC complaint and the memorandum complaining of "different treatment" were sufficient to put WAL on notice that Nelson believed she was discriminated against because of her race.

WAL may have dismissed the EEOC complaint as frivolous, but the jury found otherwise. WAL cannot now claim that the EEOC complaint was not notice simply because WAL did not believe it.

**1** Prior to sending the case to the jury, the district court strongly considered granting WAL's motion for judgment as a matter of law because of the lack of evidence of notice to WAL but decided to submit the entire case because notice was not an element of the retaliation claim. The jury found that WAL had not retaliated against Nelson for complaining about any discriminatory conduct. On the issue of whether racial discrimination

This court has on numerous occasions held that an employer is liable for impermissibly harassing behavior only if it had actual or constructive knowledge of the illegal conduct and took no prompt and adequate remedial action. See Andrade v. Mayfair Management, Inc., 88 F.3d 258, 261 (4th Cir. 1996) (collecting cases). In Dennis v. County of Fairfax, 55 F.3d 151 (4th Cir. 1995), we applied this rule to claims of racial discrimination in the workplace under Title VII and § 1981 and held "that where an employer implements timely and adequate corrective measures after harassing conduct has come to its attention, vicarious liability should be barred regardless of the specific motivation for the wrongdoing or the particular cause of action." Id. at 156. Implicit in this rule is that the employer must have adequate notice of the wrongdoing that it is charged with remedying.

The majority finds WAL liable because "[f]ive months elapsed between the time Nelson filed her EEOC complaint and the time she was fired [and because] WAL took no corrective action regarding the discrimination claim." Majority Op. at 5-6. Because the record does not disclose when WAL received notice of Nelson's EEOC claim, we can assume only that notice was sent within ten days as required. Nelson admits that, after investigating, "[t]he Alexandria Office of Human Rights found no probable cause and dismissed the complaint."[2] (Appellant's Br. at 5.) It would be curious indeed to require WAL to implement remedial measures to correct an allegedly racially-hostile work environment when the investigatory agency made a finding of "no probable cause" and when Nelson, an individual admittedly

_____

had occurred, the jury found in favor of Nelson and awarded $4,000 actual damages. Upon WAL's post-verdict motion, the district court revisited the issue of notice, required supplemental briefing, and entered judgment for WAL on the Title VII and § 1981 claims for the reasons stated in its memorandum opinion.

**2** Given the lack of credence accorded Nelson's complaint by the investigating agency, the majority has no more basis to chastise WAL for dismissing the EEO complaint as frivolous than it does the Alexandria Office of Human Rights or the EEOC. See Majority Op. at 6 n.8. Perhaps had Nelson not moved in limine to preclude WAL from mentioning the investigating agency's findings the jury's verdict would have been different.

familiar with EEOC requirements, never alleged that the offensive conduct was due to her race, despite numerous correspondence with management complaining about unfair treatment.

I agree with the district court that the record reflects no complaints of discrimination by Nelson between the EEOC charge and the exchange of memos between Nelson and WAL's general manager, Petrine Squires, during February 1994. Within one week of Nelson's statements, Squires acknowledged Nelson's "first time allegations of sexual harassment and other discriminatory conduct." (J.A. at 90k.) Squires noted that Nelson's allegations covered an extended period of time. In addition, she criticized Nelson, particularly due to her supervisory status and familiarity with EEOC requirements, for not promptly bringing matters to Squires's attention and for refusing to disclose the victims of the alleged discrimination. Nevertheless, WAL immediately hired a law firm to investigate Nelson's claims of harassment. Based on Squires's reasonable reading of Nelson's memo, the two-day on-site investigation focused on sexual harassment and a sexually hostile work environment. Moreover, although Nelson was interviewed by the attorney at length, she made no claim of harassment of any kind. Accordingly, the law firm's final report in March 1994 concluded that there was no evidence of sexual harassment.

Thus, when confronted by Nelson's allegation of misconduct, WAL took immediate and decisive action. If racial discrimination existed at WAL, then it was Nelson's failure to particularize her concerns that prevented its discovery and correction. As the district court stated, "Nelson did not merely fail to inform Watergate of the problem, but she also actively, if inadvertently, prevented management from discovering it." Nelson, 898 F. Supp. at 350.

I therefore agree with the district court that the testimony and exhibits at trial do not support a finding of actual or constructive notice to WAL of a racially-hostile environment. This conclusion is consistent with Nelson's own testimony at trial, in which she conceded that she "never used the word race," (J.A. at 172), because she "was trying to be very diplomatic" and did not want "to just come out and say, you-all are treating me bad because I am black" (J.A. at 171). Nelson admitted that she never reported that Miss Green directed racial slurs towards her. Furthermore, Nelson herself contradicts the

8

majority's conclusion that the February 1994 memo to Petrine Squires gave WAL notice of the alleged racial discrimination:

> Q: In this memo to Miss Squires, anywhere in here do you make a charge of racial discrimination?
>
> A: No, I didn't come out in those words, no, I did not.

(J.A. at 177.) If Nelson recognized that her memo did not convey a complaint of racial discrimination, how can the majority hold WAL accountable for not taking remedial action to cure such discrimination?

Squires testified that in the two-and-one-half years Nelson was employed at WAL, she complained neither orally nor in writing that she was subjected to discrimination because of her race, and that no employee ever reported that Nelson had made such a claim. Further, Squires did not interpret Nelson's letter complaining about being treated indifferently as a complaint of racial discrimination. Moreover, Squires's assistant, Ms. Reynolds, testified that in four interviews with Nelson in response to various complaints about management, Nelson never said she felt discriminated against because of her race. In fact, the issue of racial discrimination was never raised. In sum, not a single witness at trial heard Nelson complain to a supervisor or to anyone else that she was discriminated against because of her race. (J.A. at 162 (M. Gomez), 163 (T.L. Bower), 164-65 (P.M. Squires, 167 (J.W. Cisco), 197 (K.M. Green), 198 (P.A. Warters), 199 (L.A. Speakmon).)

All the evidence presented suggests that had Nelson raised the issue of racial discrimination, WAL would have investigated the charges immediately, as it did in response to Nelson's charges of sexual harassment. I find no legally sufficient evidentiary basis upon which a jury could find that WAL failed to take prompt action to correct any racially-hostile environment of which it had actual or constructive notice. Because I would affirm the district court, I dissent from the opinion of the majority.

9